UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLARK MARCUS,

                       Plaintiff,

          -v-

STUART ARCHER et al.,

                       Defendant.

19-CV-7099 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Clark Marcus brings suit against Oceans Healthcare, LLC; officers of Oceans Healthcare; and officers of Seaside Healthcare, LLC, alleging that they have subjected him to baseless and bad-faith litigation in Louisiana state court. Defendants have moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. For the reasons that follow, the motion is granted.

**I.    Background**

The following facts come from the First Amended Complaint and are presumed true for the purposes of this motion. (*See* Dkt. No. 26 ("FAC").)

Plaintiff Marcus is chairman and CEO of Advanzeon Solutions, Inc., formerly known as Comprehensive Care Corporation, a Delaware company with its principal place of business in Florida. (FAC ¶¶ 11, 25.) He lives in Tampa and New York, where he also maintains a law license. (FAC ¶ 11.)

In the early 1990s, Comprehensive Care Corporation acquired Comprehensive Behavioral Care, Inc. ("CBC"), a third-party administrator of insured health care claims. (FAC ¶¶ 30, 33.) Marcus became the CEO of Comprehensive Care Corporation in 2009 and in 2010 was elected one of CBC's three directors. (FAC ¶¶ 31–32.)

1

As a third-party administrator, CBC served as an intermediary between health care providers and insurance companies, managing patient admissions and collecting and remitting insurance payments. (FAC ¶ 33.) CBC had contracts with hospitals and healthcare providers — including Defendant Oceans Healthcare, which provides behavioral health services to adults and seniors — as well as with insurance companies like Peoples Health, Inc., and Peoples Health Network (collectively, "PHN"). (FAC ¶ 34.) CBC entered into its agreement with Oceans Healthcare in 2009, and in 2010 began processing Oceans' claims on behalf of PHN. (FAC ¶¶ 34, 36.)

Soon, however, the relationship between CBC and Oceans Healthcare soured. Oceans Healthcare accused CBC of failing to abide by the terms of their agreement and, in 2011, brought a breach-of-contract suit against CBC and PHN in Louisiana state court. (FAC ¶¶ 36–37.) Additional plaintiffs later joined the suit, including Seaside Healthcare. (FAC ¶ 37.)

In 2013, Comprehensive Care Corporation changed its name to Advanzeon Solutions and sold its shares of CBC. (FAC ¶¶ 44–45.) By that time, Marcus was no longer a director of CBC, although he did sign the sales agreement as CEO of Advanzeon. (FAC ¶ 45.) About a month later, the plaintiffs in Louisiana state court prevailed on partial summary judgment. (FAC ¶ 47.) They were awarded individual amounts of $52,300 and $14,350 but they never attempted to enforce the judgment against CBC. (FAC ¶¶ 47–48.)

Four years later, the Louisiana plaintiffs amended their suit to add Comprehensive Care Corporation, Advanzeon, and Marcus as defendants. (FAC ¶¶ 51–52.) Marcus's counsel asked plaintiffs to voluntarily dismiss him from the action, writing that the allegations against him were "entirely unsubstantiated" and that Marcus was "not liable for the alleged debts of a former subsidiary of" Advanzeon. (FAC ¶ 57.) The Louisiana plaintiffs not only kept Marcus as a

2

defendant; they also sought to depose him and later amended their complaint to add more claims against him. (FAC ¶¶ 60, 84.)

In 2019, Marcus filed this action against Oceans Healthcare, officers of Oceans Healthcare, and officers of Seaside Healthcare, alleging that they "engaged in a targeted harassment campaign against Mr. Marcus by sponsoring malevolent and frivolous litigation" against him in Louisiana. (FAC ¶ 98.) Marcus seeks compensatory and punitive damages; a declaratory judgment that he "has not committed and is not liable for any of the claims Defendants have brought against Mr. Marcus, CBC and Advanzeon" in Louisiana; and fees and costs. (FAC ¶¶ 114–15, 126–27.) Defendants have filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), as well as for failure to state a claim under Rule 12(b)(6). (Dkt. No. 34.) Because the Court concludes that it lacks personal jurisdiction over the Defendants, it need not, and does not, reach other grounds for dismissal.

## II.     Legal Standard

To survive a Rule 12(b)(2) motion to dismiss, a plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). In the absence of a "full-blown evidentiary hearing on the motion," the plaintiff is required to make only "a prima facie showing" that jurisdiction exists. *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010) (citation omitted). Such a showing must satisfy three elements: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, 12 Civ. 6390, 2013 WL 1775440, at *3 (S.D.N.Y. Apr. 25, 2013) (citation omitted). These elements must be met with "factual specificity"; conclusory

allegations will not suffice. *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (citation omitted).

There are two kinds of personal jurisdiction: specific and general. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). "General jurisdiction renders a defendant amenable to suit on all claims," while specific jurisdiction covers only claims that "arise from conduct related to the forum." *Cortlandt Street Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-01568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (citing *Daimler*, 571 U.S. 117 at 126–27). In diversity cases, "a federal court's personal jurisdiction is determined by the law of the state in which the district is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d. Cir. 2006). To determine whether personal jurisdiction exists in this case, the Court thus first looks to New York law.

### III. Discussion

To demonstrate personal jurisdiction under New York law, a plaintiff must show "either that [the defendant] was 'present' and 'doing business' in New York within the meaning of" New York Civil Practice Law & Rules ("CPLR") § 301, which governs general jurisdiction, "or that [the defendant] committed acts within the scope of New York's long-arm statute," CPLR § 302, which covers specific jurisdiction. *Schultz*, 377 F. App'x. at 102. Marcus concedes that jurisdiction does not exist under § 301 (Dkt. No. 40 at 5 n.2), so the Court will assess the existence of personal jurisdiction under only § 302.

#### A. Specific Jurisdiction

Marcus alleges that specific jurisdiction exists under CPLR § 302(a)(3)(ii), which confers jurisdiction over a nondomiciliary who commit a tortious act outside New York that causes injury within New York, if he "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." NY

4

CPLR § 302(a)(3)(ii). This is a four-part test. A plaintiff must establish that (1) the defendant committed a tort outside the state; (2) the act caused injury within the state; (3) the defendant expected or should reasonably have expected the act to have consequences within the state; and (4) the defendant derives substantial revenue from interstate or international commerce. *Cavalier Label Co. v. Polytam, Ltd.*, 687 F. Supp. 872, 878 (S.D.N.Y. 1988).

### 1.     **Tortious Act and Situs of Injury**

Marcus satisfies the first prong easily, as neither he nor Defendants dispute that the allegedly tortious act in question — the filing of the lawsuit in Louisiana — occurred outside New York. (*See* Dkt. No. 35 at 8; Dkt. No. 40 at 7.) The second prong is more complicated. To determine whether that tortious act caused injury within New York courts apply a "situs-of-injury test." *Brown v. Web.com Grp., Inc.*, 57 F. Supp.3d 345, 356 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (internal quotation marks and citation omitted). Notably, an injury does not occur in New York just because the plaintiff resides there. *Id.*

Nor does an injury occur in New York simply because a plaintiff suffers economic loss in the state. *See Troma Entm't Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (recognizing that the Second Circuit has rejected as insufficient for jurisdictional purposes "allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here" (internal quotation marks omitted)); *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991) ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3)

where the underlying events took place outside New York."). On occasion, however, courts have recognized the loss of customers or sales in New York as being sufficient to establish injury in the forum state. *See, e.g., Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 356 (S.D.N.Y. 2014) ("[H]arm to a business in the New York market through lost sales or lost customers may meet the requirement of injury in the forum state." (internal quotation marks and citation omitted)); *Cavalier Label Co.*, 687 F. Supp. at 879 (S.D.N.Y. 1988) (finding that plaintiff "adequately alleged injury within the state by asserting the loss of New York customers").

Applying the situs-of-injury test to the case at hand, it is clear that the situs of Marcus's non-economic injuries — "mental pain and anguish, extreme emotional distress, embarrassment, humiliation, and harm to health" (FAC ¶ 94) — is not New York but Louisiana, where the lawsuit against him was filed and is being litigated. The lawsuit is the "original event" that caused all of Marcus's alleged injuries. *See Mareno*, 910 F.2d at 1046 (citation omitted). For jurisdictional purposes, it is therefore irrelevant that Marcus resides in New York for a portion of the year and may have felt some of the injuries there.

The economic injuries Marcus alleges are likewise insufficient to establish injury in New York. Marcus claims that the Louisiana lawsuit has "damage[d][] his professional reputation" and jeopardized "his job security and the future of his career" as an attorney licensed in New York. (FAC ¶¶ 94, 110.) But such conclusory allegations fail to rise to the level of lost sales or customers, especially since the complaint offers no specific facts suggesting that the Louisiana lawsuit has harmed Marcus's legal practice in New York. *See Cont'l Indus. Grp.*, 586 F. App'x at 769. Moreover, in cases most akin to this one, courts have held that the situs of injury is not where the injury is felt but where the litigation was initiated. *See, e.g., Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 483 (E.D.N.Y. 2019) ("Injury from

litigation threatened or initiated in Florida does not amount to injury in New York simply because [plaintiff] is a New York resident."); *Vista Food Exch., Inc. v. Joyce Foods, Inc.*, No. 96-CV-0012, 1996 WL 122419, at *4 (S.D.N.Y. Mar. 20, 1996) (holding that injury resulting from alleged abuse of process occurred in North Carolina, even though plaintiff was domiciled in New York, where defendant "hired a North Carolina attorney, instituted suit in a North Carolina court, [and] relied on North Carolina law"). Thus, Marcus has not adequately alleged that New York is the situs of his injuries.

### 2. Reasonable Expectation

Absent a showing that Defendants caused him injury in New York, Marcus fails to meet the requirements of § 302(a)(3). But even assuming *arguendo* that Marcus was injured in New York, he would still have trouble satisfying the third prong of the statutory test: showing that Defendants "expect[ed] or should reasonably [have] expect[ed]" the Louisiana litigation to have consequences in New York. NY CPLR § 302(a)(3)(ii). In interpreting this requirement, courts look for "tangible manifestations of a defendant's intent to target New York, or for concrete facts known to the nondomiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Neither is present here. Marcus alleges no facts suggesting either that Defendants intended to target New York or that Defendants should have been aware of the possibility of suit in the state. The closest he comes is attaching a pleading from the Louisiana action from June 2019[1] in which Marcus is described as having been "a licensed and well-respected member of

---

[1] Defendants dispute whether the Court can take judicial notice of this pleading, but "[i]t is common and entirely proper for courts to take judicial notice of other court proceedings," so long as courts are not "tak[ing] judicial notice of that proceeding for the truth of the matters

7

the New York Bar for over fifty years." (Dkt. No. 39, Ex. B at 8.[2]) But one sentence in one document filed just one month before Marcus initiated this action in New York does not suffice to have alerted Defendants to the possibility of suit in New York, especially when Marcus lives for most of the year in Florida. (*See* Dkt. No. 40 at 3.) Marcus alleges that Defendants' knowledge of his New York license, coupled with their accusations of fraud and commingling of assets, "have the foreseeable effect of causing harm to Plaintiff's business in New York." (Dkt. No. 40 at 9.) But the "mere foreseeability of in-state consequences and failure to avert that consequence is not sufficient to establish personal jurisdiction under New York's long-arm statute." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 626 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Defendants would have had to purposely avail themselves "of the benefits of the laws of New York" for personal jurisdiction to be reasonable. *Id.* (internal quotation marks and citations omitted). There is no allegation they did so here.

As Marcus has failed to satisfy the second and third prongs of the § 302(a)(3) test, there is no need for the Court to discuss the final prong: whether Defendants derive substantial revenue from interstate or international commerce. *See Cavalier Label Co.*, 687 F. Supp. at 878 (calling "[e]ach element" of the four-part test "essential"). Because there is no statutory basis for jurisdiction, there is also no need for the Court to address whether the exercise of personal jurisdiction would comport with due process. Absent facts demonstrating the existence of personal jurisdiction, Marcus's claims must be dismissed.

---

asserted therein." *Guzman v. U.S.*, No. 11-CV-5834, 2013 WL 543343, at *3–4 (S.D.N.Y. Feb. 14, 2013). Here, the pleading is being offered not for the truth of the matter asserted — whether Marcus is in fact a member of the New York bar — but for whether Defendants had notice of that fact. It is therefore properly the subject of judicial notice.

[2] In his briefing, Marcus cites Exhibit C, rather than Exhibit B, for the proposition that Defendants knew he was a New York lawyer. (Dkt. No. 40 at 9.) The Court assumes this to have been in error, as Exhibit C does not mention New York while Exhibit B does.

### B.     Jurisdictional Discovery

In his opposition, Marcus requests leave to conduct discovery to "obtain additional facts concerning the Seaside Defendants' contacts with New York." (Dkt. No. 40 at 14–15.) Courts have "broad discretion in determining whether or not to permit discovery aimed at establishing personal jurisdiction." *Vista*, 124 F. Supp. 3d at 313 (internal quotation marks and citation omitted). The party seeking discovery bears the burden of "showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011). Where a plaintiff fails to establish a prima facie case for jurisdiction, "a district court does not err in denying jurisdictional discovery." *Vista*, 124 F. Supp. 3d at 314; *see also Best Van Lines Inc. v. Walker*, 490 F.3d 239, 254 (2d Cir. 2007) ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."). A court may also deny jurisdictional discovery where "additional discovery would not uncover unknown facts or cure the deficiencies in the Plaintiff's pleading." *Vista*, 124 F. Supp. 3d at 314 (internal quotation marks and citation omitted).

Here, Marcus has failed to make a prima facie case for jurisdiction. He has also failed to explain how additional discovery would help establish jurisdiction. Given that Marcus has conceded the absence of general jurisdiction, it is not clear what additional facts he could hope to uncover at this stage to satisfy the requirements of CPLR § 301. As for specific jurisdiction, no amount of contact with New York would overcome the fact that the situs of injury is Louisiana. Accordingly, Marcus's request for jurisdictional discovery is denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 19, 21, and 34, and to close this case.

SO ORDERED.

Dated: August 24, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge